IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| K.B., by and through her natural parent, JENNIFER QASSIS; and LILLIAN KNOX-BENDER, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 17-cv-2391-JMP-tmp |
| METHODIST HEALTHCARE–MEMPHIS HOSPITALS d/b/a Methodist Hospital and Le Bonheur Children's Hospital, | ) ) ) ) ) ) | |
| Defendant. | ) | |

_____

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL**
_____

Before the court by order of reference (ECF No. 25) is defendant Methodist Healthcare–Memphis Hospitals d/b/a Methodist Hospital and Le Bonheur Children's Hospital's ("Methodist") Motion to Compel James E. Blount IV to Respond to Discovery, filed July 10, 2017. (ECF No. 19.) Plaintiffs K.B. and Lillian Knox-Bender filed a response on July 24, 2017. (ECF No. 29.) The court held a hearing on the motion on August 23, 2017. (ECF No. 39.) For the following reasons, the court denies Methodist's motion.

**I.    BACKGROUND**

In 2007, James E. Blount IV represented a plaintiff in a class action against Methodist in state court, alleging that Methodist used improper billing practices. (ECF No. 19-15.) Since the original suit, Methodist has twice removed the case to federal court, and on both occasions the case was remanded. (ECF No. 24 at 1–2.) On June 9, 2017, Methodist removed the case to federal court for the third time, creating the instant case. (ECF No. 1.)

In the present iteration of the suit, K.B. and Knox-Bender claim that Methodist overbilled them and their insurance companies. (ECF No. 44-2 at 2–3.) They are suing Methodist for breach of contract, unjust enrichment, and violating the Tennessee Consumer Protection Act. (Id. at 4–9.) K.B. and Knox-Bender argue that any applicable statutes of limitations should be tolled due to Methodist's allegedly fraudulent concealment of its practices. (Id. at 13.) They seek compensation for the alleged overpayments, punitive damages, and an injunction. (Id. at 14–15.)

Over the course of the lawsuit, Blount, despite serving as lead trial counsel, has elected to submit four personal affidavits to aid his clients' case. He submitted the first affidavit on September 29, 2010, to support a motion for partial summary judgment. (ECF No. 19 at 7–8, No 19-1.) In this affidavit, he stated that Jennifer Qassis hired him to represent

her child, K.B., in a personal injury claim resulting from a car accident, that the tortfeasor's liability insurance carrier paid him settlement funds, and that he then provided a portion of those funds to Methodist. (ECF No. 19-1 at 3.) Blount submitted the second affidavit on June 21, 2013, to support a response opposing Methodist's motion to dismiss the suit. (ECF No. 19 at 7–8, No. 19-10.) In this affidavit, he stated that during the settlement negotiations Methodist contacted him about the balance owed on K.B.'s account and demanded payment from the proceeds of the settlement. (ECF No. 19-10 at 2.) Blount submitted the third affidavit on January 7, 2016, to support a now withdrawn motion for sanctions. (ECF No. 19 at 7–8, No. 19-19.) In this affidavit, he stated that on the day he was supposed to depose the defendant no one appeared for the deposition. (ECF No. 19-19 at 2–3.) Blount submitted his fourth affidavit on August 29, 2016, to support a now withdrawn motion for partial summary judgment and injunctive relief. (ECF No. 19 at 7–8, No. 19-3.) In this affidavit, he listed examples of the poor treatment that he and his clients had received from Methodist. (ECF No. 19-3 at 3.)

The examples in Blount's fourth affidavit include the following: Blount stated that he received bills from Methodist failing to reflect payments that Methodist received from health insurers. (Id.) He stated that he received copies of General

Condition of Admissions ("GCOA") forms and that Methodist required patients to sign the forms before receiving medical treatment. (Id.) He stated that he received "letters, faxes, telephone calls and bills" from Methodist demanding more money from his clients than his clients owed. (Id.) He stated that Methodist's "misrepresentations" about the amount of money that patients owed "needlessly prolong the process" and might deprive his clients of "money that they justly deserve." (Id.) Finally, he stated that to his knowledge Methodist has never reimbursed overpayments. (Id.)

In light of the contents of Blount's affidavits as well as Methodist's belief that Blount "orchestrat[ed] the circumstances giving rise" to the suit, on July 10, 2017, Methodist filed a motion to compel Blount to respond to discovery and sit for an oral deposition. (ECF No. 19 at 1.) Methodist seeks to depose Blount on the following subjects: (1) Blount's and his clients' understanding of Methodist's billing practices; (2) various communications that Blount has had with Methodist; (3) Blount and his co-counsel's access to legible copies of GCOA contracts prior to 2016; and (4) Blount's handling of K.B.'s prior tort claims and settlement. (Id. at 11–14.)

On July 24, 2017, K.B. and Knox-Bender responded in opposition to Methodist's motion to compel. (ECF No. 29 at 1.) In this motion, they argue that Methodist has not met the

-4-

heightened standard necessary for deposing an opposing party's legal counsel. (Id. at 1–3.) They ask that, if this court does order Blount to submit to a deposition, the court also allow plaintiffs' counsel to depose defense attorney Buckner Wellford concerning his involvement in a minor settlement in state court. (Id. at 3.)

## II. ANALYSIS

According to the Federal Rules of Civil Procedure, "a party may . . . depose *any* person." Fed. R. Civ. P. 30(a)(1) (emphasis added). However, because of the need to protect trial counsel from gratuitous burdens and costs, as well as the need to preserve the efficient function of the adversarial system, courts are wary of the discovery tactic of deposing opposing counsel. See Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986); see also Graves v. Shelby Cty. Bd. of Educ., No. 2:14-CV-02992-DKV, 2015 WL 13116991, at *5 (W.D. Tenn. Sept. 11, 2015) ("[D]eposing the counsel of an opposing party . . . has been discouraged by many courts as a means of discovery.").

With due regard for these concerns, the Sixth Circuit has adopted the Shelton test, which sets a heightened standard that a party must overcome in order to obtain discovery from opposing counsel. Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 628–29 (6th Cir. 2002) (citing Shelton, 805 F.2d at 1327). The Shelton test applies in "those instances when the attorney

to be deposed is either trial/litigation counsel or the subject matter of the deposition may elicit litigation strategy." Ellipsis, Inc. v. Color Works, Inc., 227 F.R.D. 496, 497 (W.D. Tenn. 2005). James Blount IV is K.B. and Knox-Bender's trial counsel. Therefore, the Shelton test applies.

According to the Shelton test, in order to depose Blount, Methodist must demonstrate that (1) deposing Blount is the only way to obtain the information it seeks, (2) this information is relevant and not privileged, and (3) the information is crucial to Methodist's preparation of the case. See Alomari v. Ohio Dep't of Pub. Safety, 626 F. App'x 558, 573 (6th Cir. 2015) (quoting Nationwide, 278 F.3d at 628). For each of the subjects about which Methodist seeks to depose Blount, Methodist fails to meet one or more of these three requirements.

**A. Methodist's Billing Practices**

If Methodist were allowed to depose Blount about its billing practices, Methodist would seek to discover information on three topics. First, it would determine how long Blount knew about the alleged breach of contract before raising the issue in 2016. (ECF No. 19 at 14.) Second, it would explore Blount's statement that the hospital withheld treatment from patients until they signed certain documents. (ECF No. 19 at 8-9.) Third, it would question Blount about whether K.B. and Knox-

Bender know enough about Methodist's billing practices to qualify as class representatives. (ECF No. 19 at 9, 11, 17.)

The court finds that Methodist could learn most of this information by deposing the plaintiffs and other witnesses. Indeed, according to Methodist's motion, it has already done just that. Methodist noted in its motion that Qassis has "admitted that her knowledge of Methodist's billing practices comes entirely from her attorneys" and retracted her prior statement that Methodist had required her to sign a Lien Attachment before it treated K.B. (ECF No. 19 at 11.) Methodist also observed that "[t]he depositions of the former and current plaintiffs has [sic] so far confirmed their lack of knowledge and material participation in this case." (ECF No. 19 at 16.) As to the statute of limitations issue, the court does not see how Blount's knowledge regarding Methodist's billing practices would be relevant to whether the plaintiffs knew or reasonably should have known about the accrual of their breach of contract claim. See generally Kohl & Co. v. Dearborn & Ewing, 977 S.W.2d 528, 532 (Tenn. 1998) ("[A] cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained . . . ." (citations omitted)); Meyers v. First Tennessee Bank, N.A., 503 S.W.3d 365, 375 (Tenn. Ct. App. 2016) (same).

As the information that Methodist seeks about Blount's, knowledge of its billing habits is either available from other sources or irrelevant, the court denies Methodist's motion to compel deposition on this subject.

**B. Communications Between Methodist and Blount**

Should the court permit Methodist to depose Blount, Methodist would cover three topics relating to various communications between Blount and the hospital. First, it would learn the details of the communications that Blount claimed to receive from Methodist in which Methodist allegedly sought more money than patients owed. (ECF No. 19 at 10.) Second, it would inquire about the identities of the Methodist employees with whom Blount has spoken. (Id.) Third, it would ask about Blount's comment that Methodist has prolonged the billing process. (Id.)

Methodist could learn all of this information by submitting document requests to Blount, consulting hospital records, and questioning its own employees. For instance, during the motion hearing on this matter, the parties made the court aware that — at least with respect to employee identification — Methodist already has all of the information that it needs in its own records of billing phone calls. (ECF No. 39.) Moreover, part of this information, such as whether Methodist has "cause[d] confusion and difficulty in resolving [Blount's] clients'

-8-

personal injury claims," is not crucial to Methodist's preparation of the case. (Id. (quoting ECF No. 19-3 at 3.)) Since the information about communications between Blount and Methodist is either available by other means or not crucial to the case, the court denies Methodist's motion to compel deposition on this subject.

**C. Accessibility of Legible Copies of GCOA**

Methodist wants to depose Blount about when he and his co-counsel first gained access to a legible copy of the GCOA. It argues that this is relevant because one of the plaintiffs' attorneys "injected these issues into the litigation." (ECF No. 19 at 14.) Methodist reports that this attorney defended the recent addition of the GCOA contract claim on the grounds that "the attorneys did not have a copy of the GCOA that was 'legible' until [2016]." (Id.)

This issue appears to be unsupported by the record and, thus, irrelevant. The court has reviewed the transcript from the hearing when the attorney purportedly made the statement. (ECF No. 19-24.) In this transcript, the court could find no indication that the attorney claimed recent acquisition of a legible copy of the GCOA form. (Id. at 8–10, 25, 30.) In any event, Methodist has not adequately explained how the information would be crucial to its preparation of the case. Because this information is not relevant or crucial to

Methodist's case, the court denies Methodist's motion to compel deposition on this subject.

**D.   K.B.'s Settlement**

Methodist seeks to depose Blount about three topics involving K.B.'s settlement.  First, it would ask whether Blount settled case in accordance with Tennessee law.  (ECF No. 19 at 10.)  Second, it would substantiate its defense that K.B. is not entitled to equitable relief by ascertaining whether her mother, Qassis, "knowingly allowed her daughter's settlement recovery to be deducted for medical charges."  (Id. at 15.)  Third, it would have Blount explain why the money that Blount sent to Methodist from K.B.'s settlement ended up in Qassis's account at Methodist, not K.B.'s account.  (Id.)  All of this information is either available from sources other than Blount.

The court understands that Methodist has asserted an affirmative defense of "laches, waiver, estoppel, unclean hands, failure to mitigate damages, assumption of risk, acquiescence, and unjust enrichment" and cited Blount's purported lack of court approval for K.B.'s settlement as pertinent to the defense.  (ECF No. 33 at 19.)  However, it is unclear why deposing Blount would provide any additional evidence on this point.  Methodist has already demonstrated that the docket sheet and the file that Blount provided for this settlement contain no evidence of court approval.  (ECF No. 19 at 10.)  As for the

-10-

cleanliness of K.B.'s and Qassis's hands, that is a question that Methodist can resolve by deposing K.B. and Qassis. While Methodist may take issue with the reliability of these witnesses, (ECF No. 19 at 11–12), that fact does not expose Blount to deposition. Finally, with respect to the misapplication of funds for K.B.'s settlement, K.B. and Knox-Bender have provided a factual basis to explain their version of what happened with the funds, which Methodist can challenge through discovery obtained from the plaintiffs themselves and the documents upon which they rely. (ECF No. 37 at 2; No 37-1 at 2.) Thus, as this information is available to Methodist by means other than a deposition of Blount, the court denies Defendants' motion to compel deposition on this topic.

### III. CONCLUSION

For the reasons set forth above, Methodist's motion to compel is denied.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

October 31, 2017
Date